Lamont STARR and Betty G.
Starr, Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, a corporation of the State
of Ohio, and State Farm Mutual Auto-
mobile Insurance Company, a corpora-
tion of the State of Illinois, Defendants.

Civ. A. No. 8553.

Court of Chancery of Delaware,
New Castle County.

Submitted: Jan. 20, 1988.
Decided: May 10, 1988.
Revised: Sept. 8, 1988.

Bernard A. VanOgtrop, Cooch & Taylor, Wilmington, for plaintiffs.

James F. Kipp, and Robert K. Pearce, Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for defendant Nationwide Mut. Ins. Co.

Stephen P. Casarino, and Sherry Ruggiero, Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant State Farm Mut. Auto. Ins. Co.

HARTNETT, Vice Chancellor.

In this suit plaintiffs seek to have reformed the uninsured motorist coverage provisions contained in two insurance policies issued by defendant Nationwide Mutual Insurance Company ("Nationwide") and one policy issued by State Farm Mutual Automobile Insurance Company ("State Farm"). One of the Nationwide policies provided liability and uninsured motorist coverage to the plaintiffs and the other provided similar coverage to Vanessa Street, who was the driver of an automobile in which plaintiff Lamont Starr, a passenger, was injured. The State Farm policy provides liability and uninsured motorist coverage to Commuter Co-op, Inc., which owned the automobile in which Mr. Starr was a passenger. Plaintiffs seek reformation of the three policies claiming that the policies should have contained higher limits of coverage as part of their uninsured motorist provisions because the higher cover-

age was not offered to the insureds, as is required by Delaware law. *O'Hanlon v. Hartford Accident and Indem. Co.*, 522 F.Supp. 332 (D.Del.1981); *State Farm v. Arms*, Del.Supr., 477 A.2d 1060 (1984).

Pursuant to Chancery Rule 56, all the parties moved for summary judgment. State Farm and Nationwide, although co-defendants, present different claims for summary judgment and thus, their motions will be considered separately. As all the parties concede, there is no genuine issue of material fact as to the issues raised in the cross motions for summary judgment.

I find that the plaintiffs may be entitled to reform the uninsured motorist coverage provided in the policy issued to them by Nationwide. They cannot however, as a matter of law, be entitled to reform the Nationwide policy issued to Vanessa Street or to reform the State Farm policy issued to Commuter Co-op, Inc.

# I

This action arises because the plaintiffs are unable to collect a $168,500 judgment rendered in their favor in the Delaware Superior Court.

On November 28, 1979, plaintiff Lamont Starr suffered personal injuries as a result of the van in which he was riding colliding with a vehicle operated by Barbara J. Suiter (nee DeMary). Mr. Starr was a passenger in the van which was driven by Vanessa Street and owned by Commuter Co-Op, Inc., a Delaware corporation in which Starr served as Vice-President but which is no longer in existence.

At the time of the accident, Temple Mutual Insurance Company ("Temple Insurance") had provided liability insurance coverage to Suiter, the driver of the motor vehicle which collided with the van in which plaintiff-Starr was a passenger, in the amount of $15,000 per person, $30,000 per occurrence. Commuter Co-Op, Inc., the owner of the van, was covered by a State Farm policy providing liability coverage of $100,000 per person and $300,000 per occurrence and uninsured motorist coverage of $10,000 per person and $20,000 per occurrence. The plaintiffs were insured by a

Nationwide policy that provided liability coverage of $100,000 per person and $300,000 per occurrence and uninsured motorist coverage of $10,000 per person and $20,000 per occurrence. Street, the operator of the van in which plaintiff Starr was a passenger, was insured by a Nationwide liability policy providing coverage for $100,000 per person and $300,000 per occurrence and uninsured motorist coverage of $10,000 per person and $20,000 per occurrence.

In April 1980, the plaintiffs, Mr. and Mrs. Starr, Vanessa Street and Commuter Co-Op, Inc. joined in filing a suit in the Superior Court against Suiter who was insured by Temple Insurance. On November 6, 1981, the Superior Court entered judgment against Suiter in favor of all plaintiffs in the amount of $168,500. Shortly thereafter, Commuter Co-Op, Inc. and Street settled their claims against Suiter for $10,000 each and are not parties here.

Plaintiffs, however, in an attempt to collect their entire judgment, sought to bring an action against Temple Insurance for bad faith in not settling their claim. In order to be in a position to bring that claim, plaintiffs sought an assignment to them of Suiter's claims against her carrier, Temple Insurance. On September 20, 1982, Suiter and plaintiffs entered into an Assignment Agreement whereby Suiter assigned her claims against Temple Insurance to plaintiffs in exchange for plaintiffs' promise to accept the assignment as full payment and satisfaction of any claims against her. The Assignment Agreement, however, provided that the satisfaction would occur at the termination of plaintiffs' bad faith litigation against Temple Insurance, regardless of its outcome.

In May 1985, Temple Insurance entered into bankruptcy. As a result of that development, the plaintiffs filed a proof of claim, pursuant to Pennsylvania law, with the Liquidation Division of the Insurance Department of Pennsylvania, seeking to recover from the Pennsylvania Liquidation Fund the damages awarded to them by the Superior Court. On December 9, 1985, Pennsylvania's General Adjustment Bureau advised the plaintiffs' attorney that

the Pennsylvania Guarantee Insurance Association would not make any payment to plaintiffs on behalf of Temple Insurance until the plaintiffs exhausted any remedies they had against any other insurance carriers.

The plaintiffs then filed this action on July 21, 1986 seeking to have reformed upwards the uninsured motorist coverage in the policy provided to Commuter Co–Op, Inc. by State Farm, and in the policies provided by Nationwide to Street and the plaintiffs.

## II

Summary judgment, while favored as an expeditious means of resolving many lawsuits, will be granted only when the Court is convinced, after a review of the complete record and with all inferences in favor of the non-moving party, that there is no genuine issue as to any material fact and that summary judgment should be granted as a matter of law. *Moore v. Sizemore,* Del. Supr., 405 A.2d 679 (1979); *Nash v. Connell,* Del.Ch., 99 A.2d 242 (1953); Chancery Rule 56. All parties concede that this matter is ripe for summary judgment.

## III

■ Nationwide first argues that because the plaintiffs are entitled to recover under the uninsured (or underinsured) motorist coverage provisions contained in the Nationwide policy issued to them, only if they are legally entitled to recover against an uninsured motorist, plaintiffs cannot now have reformed their policy with Nationwide to seek additional coverage for the acts of Suiter because they have released Suiter, the uninsured motorist.

Plaintiffs' Nationwide insurance contract provides, in relevant part:

"Under [uninsured motorist] coverage we will pay all sums for bodily injury and property damage that you or your legal representative are legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle."

The disputed Assignment Agreement of September 20, 1982 between Suiter as as-

signor and plaintiffs as assignee provided, in part:

"1. [Suiter] will and does hereby assign to the [plaintiffs] all of her rights against Temple Mutual Insurance Company, by virtue of the aforesaid, and authorizes the [plaintiffs] to prosecute the said claim against Temple Mutual Insurance Company in the name of [Suiter] or the [plaintiffs], as the [plaintiffs] see fit.

2. The [plaintiffs] accept this assignment in full payment and satisfaction of the said judgment and interest thereon and of their claim against [Suiter].

3. The [plaintiffs] agree that they will prosecute [Suiter's] claim against Temple Mutual Insurance Company with reasonable dispatch and that upon the termination of said litigation, whatever the outcome thereof be, the [plaintiffs] will satisfy said judgment against [Suiter] in full."

Generally, an injured plaintiff, absent a valid assignment, may not bring an action directly against the tort-feasor's insurance carrier. *Fidelity and Casualty Company of New York v. Cope,* Fla.Supr., 462 So.2d 459 (1985); See generally 44 AM.JUR.2d, *Insurance* § 1445. The assignment of Suiter's claim to plaintiffs, therefore, was necessary before the plaintiffs could seek recovery from Temple Insurance. In exchange for this necessary assignment, the plaintiffs promised to accept, upon the termination of their litigation against Temple Insurance, the assignment as complete satisfaction of their judgment against Suiter.

Nationwide argues that the plaintiffs' promise of complete satisfaction of the judgment constituted an absolute present release. A release, however, is a writing providing that a duty owed to the maker of the release is discharged immediately or upon the occurrence of a condition. Restatement (Second) of Contracts, § 284. Delaware courts construe releases to effect the general intent of the parties. *Adams v. Jankouskas,* Del.Supr., 452 A.2d 148 (1982). A valid release may be executed, therefore, so as to be operative in the future on the occurrence of a specified condi-

tion precedent. J. CALAMARI, J. PER-RILLO, *The Law of Contracts*, § 21–10 (2d Ed.1977); CORBIN, *A Comprehensive Treatise on the Working Rules of Contract Law*, § 1239 (2d Ed.1964). The effective date of a release subject to a condition precedent is generally the date the condition is satisfied. CORBIN, supra. This is particularly true when the maker of the release controls the happening of the condition precedent. CORBIN, supra, citing, *Stiebel v. Grosberg*, N.Y.App., 202 N.Y. 66, 95 N.E. 692 (1911); *Gibbons v. Vouillon*, 137 Eng.Rep. 597 (C.B.1849). Prior to the occurrence of the condition precedent, therefore, any recovery from the released party is temporarily suspended. *Id.*

A release subject to a condition precedent, however, must be distinguished from a promise to release. *Macy v. United States*, 3rd Cir., 557 F.2d 391, 393 (1977). "... A promise to discharge in the future an existing duty merely creates a new duty that can itself be discharged by the parties. Such a promise is not a release ..." Restatement (Second) of Contracts § 284, Comment a. A promise to release, unlike a release, cannot operate as satisfaction for a judgment. *Memphis v. Brown*, 87 U.S. (20 Wall.) 289, 308, 22 L.Ed. 264 (1873); Compare *Buchanan v. Buchanan*, 83 N.C.App. 428, 350 S.E.2d 175 (1986) and *Thompson v. Commercial Union Insurance Co.*, Fla. App., 267 So.2d 18 (1972); *Shingleton v. Bussey*, Fla.Supr., 223 So.2d 713 (1969) with *Eulo v. DeVal Aerodynamics, Inc.*, 430 F.2d 325 (3d Cir.1970).

The September 20, 1982 Agreement provides that upon the termination of plaintiffs' litigation against Temple, regardless of its outcome, plaintiffs' judgment against Suiter will be satisfied. The agreement therefore creates a conditional release, not a promise to release, because the release is subject to a condition precedent—the termination of the plaintiffs' litigation with Temple. The litigation against Temple is now stayed and has not been terminated. The release, therefore, by its terms has not yet become operative or effective. See CORBIN, supra.

Plaintiffs, however, cannot immediately recover on their judgment against Suiter. A release subject to a condition precedent creates, before the condition occurs, a temporary suspension of the underlying claim. See *Gibbons*, supra. Thus, while the plaintiffs gave a valid release to Suiter, the release is subject to a condition precedent and will not be effective until the resolution of the claims of plaintiffs against Temple.

Suiter, the uninsured motorist, therefore, is still legally obligated to satisfy the plaintiffs' claim, although any suit against Suiter by plaintiffs in the interim would be temporarily suspended.

### IV

Nationwide's second argument in support of its motion for summary judgment is that the plaintiffs' release of Suiter in order to bring suit directly against Temple constituted a waiver of plaintiffs' right to reform their policy with Nationwide. As previously discussed, however, the plaintiffs have not presently released Suiter and hence, have not yet waived any right of reformation.

### V

Nationwide's third argument in support of its motion for summary judgment is that the plaintiffs, by failing to notify Nationwide of their agreement with Suiter, have breached conditions in their Nationwide insurance contract. Nationwide argues that it has lost a subrogation right due to the release of Suiter from personal liability. In addition, Nationwide claims that the plaintiffs breached the terms of the insurance contract by failing to serve it with the original complaint in the Superior Court, by not obtaining Nationwide's consent to the Superior Court judgment and by not submitting written proof of the complaint, all of which are required under the insurance contract.

Increasingly, courts are adopting a two-part test when failure to notify the insurance carrier will cause a forfeiture of the insured's right to recover. See generally APPLEMAN, *Insurance Law & Practice*

§ 1414 (2d Ed.1967). In order for there to be a forfeiture of a claim, the insurer must show that the notice provisions of the contract were violated and that the insurer was prejudiced thereby. *General Accident Fire and Life Assurance Corporation, Ltd. v. Shasky*, 266 Or. 312, 512 P.2d 987, 991 (1973). See also WIDISS, *Uninsured and Underinsured Motorist Insurance*, § 8.15 (2d Ed.1987).

While violations of the notice provisions of the insurance contract may have occurred, there could not be any prejudice arising from the failure of the plaintiffs to provide Nationwide with a copy of the Superior Court complaint or an equivalent written report of the suit or to have obtained Nationwide's consent to the judgment after trial, because Nationwide bases its prejudice claim solely on the alleged loss of a subrogation right arising from the purported release of Suiter. I have found, however, that the Assignment Agreement of September 20, 1982 does not constitute a present release and, therefore, Nationwide has not lost any subrogation right because of it.

### VI

■ Nationwide's fourth argument is that the plaintiffs' claim seeking to reform upwards their uninsured motorist coverage in their Nationwide policy is barred by laches. While the non-existence of laches generally cannot be determined before discovery has taken place, *Baker v. Nason*, 236 F.2d 483, 493 (5th Cir.1956); *Shanik v. White Sewing Machine Corp.*, Del.Supr., 19 A.2d 831 (1941), that defense is precluded here by statute. The Delaware Insurance Code, 18 *Del.C.* § 3902(c)(3), provides that a motor vehicle will be considered uninsured if the tortfeasor's insurer becomes insolvent at the time of, or within one year of the occurrence of a loss. The Code further provides, however, "Nothing contained in ... (c) shall be deemed to prevent any insurer from providing insolvency protection to its insureds under more favorable terms." 18 *Del.C.* § 3902(c). The policy in question is silent as to any time limit on insolvency and it merely provides, "An uninsured motor vehicle is ...

one for which the insuring company denied coverage or becomes insolvent ...". In the absence of a contractual limit, courts will generally not incorporate statutory limits into a policy:

"When an uninsured motorist insurance policy includes coverage for insolvencies, but does not specify a time limit, the time period prescribed in the statute may not be incorporated into the coverage terms. Courts could decide that the statute only establishes the minimum level of coverage, and that insurance companies are free to provide more favorable or extensive coverage. Several courts have applied this analysis, holding that when uninsured motorist coverage states that insurance is provided in the event of an insolvency and does not place a time limit with respect to the occurrence of an involvency, the uninsured motorist coverage was more extensive than required by the statute. The courts concluded that in this situation, an insured is not barred from asserting a claim under the uninsured motorist coverage even though the insolvency occurred after the time specified in the statute has passed."

WIDISS, supra, § 8.17, citing, *Government Employees Insurance Company v. Burak*, Fla.App., 373 So.2d 89 (1979).

Because there is no time limit in the insurance contract, plaintiffs' claim for uninsured motorist coverage cannot be barred by lapse of time. "The Court may not, in the guise of construing a contract, rewrite it to supply an omission in its provisions ...". *Cohn v. Crocker Nat'l Corp.*, Del.Ch., 490 A.2d 569, 572 (1985).

### VII

■ Nationwide's final argument is that the plaintiffs lack standing to reform the Nationwide policy issued to Vanessa Street. In Delaware, as has been held in *Malone v. United States Fidelity and Guaranty Company, et al.*, Del.Ch., C.A. No. 8293, Hartnett, V.C. (October 5, 1987) [available on WESTLAW, 1987 WL 18107], and *Menefee v. State Farm Mutual Automobile Insurance Company, et al.*, Del.Super., C.A.

No. 84C–AP–84, Balick, J. (May 28, 1986) [available on WESTLAW, 1986 WL 6590], the right to reform uninsured motorist coverage belongs solely to the contracting party, the insured, and not to other persons who may benefit from the policy coverage. Plaintiffs here are not the insured in Street's policy and Nationwide's motion for summary judgment in its favor as to any claim by plaintiffs to reform Street's policy must therefore be granted.

In summary, Nationwide's motion for summary judgment will be denied as to the issue of possible reformation of the Nationwide policy issued to plaintiffs. The plaintiffs, however, are not entitled as a matter of law to have Street's insurance policy with Nationwide reformed and Nationwide's motion for summary judgment will be granted as to that issue.

### VIII

■ In its motion for summary judgment, State Farm, the insurer of Commuter Co-op, Inc., asserts: (1) that the September 20, 1982 Assignment Agreement between Suiter and the plaintiffs constituted a present release; (2) that Commuter Co-op, Inc.'s policy with State Farm was imposed on State Farm pursuant to Delaware's assigned risk plan and, therefore, State Farm should not be required to provide coverage not contracted for; and (3) that the plaintiffs lack standing to reform the insurance policy of Commuter Co-op, Inc.

As discussed previously, the September 20, 1982 Assignment Agreement was a release subject to a condition precedent and is not presently operative.

The second argument of State Farm involves a novel issue of Delaware Law which I need not reach. But see *Walker v. State Farm Mut. Auto. Ins. Co.*, 661 F.Supp. 930 (D.Del.1987).

State Farm's motion for summary judgment must be granted, however, because the plaintiffs lack standing to reform an insurance policy issued to a corporation no longer in existence. If plaintiffs' theory were correct, this Court would be in the anomalous position of allowing reformation of an insurance policy in which there is no insured. Moreover, the decisions in *Malone*, supra, and *Menefee*, supra, mandate that uninsured motorist coverage must be offered only for the benefit of the insured. Although plaintiff Lamont Starr was the Vice President of Commuter Co-op, Inc., the only insured under the policy was the corporation.

### IX

In summary, the plaintiffs may be entitled to a reformation of their insurance coverage with Nationwide if they were not offered the higher limits uninsured motorist coverage. They, however, have no legal right to seek reformation of the Nationwide policy issued to Vanessa Street or the State Farm policy issued to Commuter Co-op, Inc.

Nationwide's motion for summary judgment as to the claim of plaintiffs that is based on the policy covering Street is therefore granted, but Nationwide's motion for summary judgment as to the claim of plaintiffs that is based on plaintiffs' policy with Nationwide is denied. State Farm's motion for summary judgment as to the claim of plaintiffs that is based on the State Farm policy issued to Commuter Co-op, Inc. is granted.

IT IS SO ORDERED.